IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.: 1:24CR00150 |
| | ) |
| Plaintiff, | ) JUDGE DAN A. POLSTER |
| | ) |
| v. | ) |
| | ) |
| RICHARD SEAWRIGHT | ) <u>GOVERNMENT'S SENTENCING</u> |
| | ) <u>MEMORANDUM</u> |
| Defendant. | ) |

Now comes the United States of America, by and through its counsel, Carol M. Skutnik,

Acting United States Attorney, and Assistant United States Attorney Margaret Kane, and hereby

provides the following in support of its sentencing recommendation.  The Government agrees with

the calculations contained in the Final Presentence Investigation Report filed on December 20,

2024.  (R. 18:  Sealed Presentence Investigation Report ("PSR"), PageID 110).  However, the

Government asks that this Court impose a variance above the calculated sentencing range based

the factors enumerated in 18 U.S.C. § 3553(a).  The Government submits that a sentence of 60

months properly balances the § 3553(a) factors including that it reflects the nature and

circumstances of Seawright's offense and is appropriate to deter him and protect the public.

I.     **<u>FACTS OF CONDUCT</u>**

   **A.  Offense Conduct**

         Over five years, Richard Seawright bought at least 52 guns and sold most of them.

(R. 18:  PSR, PageID 109).  Fourteen of those firearms were recovered from others when

those people were arrested for committing crimes.  (<u>Id</u>.).  Four of the firearms Seawright

bought were recovered in shootings, one involving a homicide.  (<u>Id</u>.).  Even after Seawright

pled guilty in this case on October 1, 2024, a firearm he bought was recovered in an

aggravated robbery that occurred on November 1, 2024.  Seawright's actions put firearms into the hands of dangerous individuals and made it possible for people otherwise unable to lawfully buy guns to access them and use them in crimes.  Seawright's actions put firearms into the community and allowed customers to bypass security precautions, such as background checks, to access guns.

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began investigating Seawright after multiple guns he bought were linked to crimes through the National Integrated Ballistic Information Network (NIBIN).  (R. 18:  PSR, PageID 103).  Two firearms that Seawright bought were used in shootings.  (Id.).  The NIBIN system uses ballistic comparisons between firearms, ammunition, and shell casings recovered from crime scenes.  (Id.).  ATF learned that Seawright bought at least 52 guns between April of 2018 and June of 2023.  (Id., PageID 103-04).  Thirteen of those guns were recovered from Seawright.  (Id., PageID 109).  Thirteen guns were recovered from others in connection with crimes.  26 firearms have not been recovered and are therefore likely with individuals who are not allowed to possess guns.

Text messages between Seawright and his cousin and other customers make it clear that Seawright was selling firearms for a profit.  (Id., PageID 105-07).  Seawright referred to the guns he had as "hard shit" and "nice ass beams."  (Id.).  He showed that he understood that selling the guns to others was wrong by stating "can't nobody else get caught with my shit remember" and that he couldn't sell guns to anyone "hot."  (Id.).  Seawright also sent to others multiple pictures of the different firearms and ammunition he had for sale.  (Id.).

Text messages between Seawright and others also show he had access to multiple firearms and sold all types of guns.  For example, he stated, "but I sell all type of shit so

Ima have more in a week." He also referred to selling custom guns, showing he knew how to alter guns and make them more marketable. (Id., PageID 108). He also stated, "I us to sell cheap shit now I only sell shit for a band or more." (Id.). He also discussed selling drums, a type of high-capacity magazine capable of holding a large number of bullets. (Id.).

Agents searched two separate residences where Seawright lived. (Id., PageID 108). In the home in which he lives with his mother, agents found seven firearms of different calibers, thousands of rounds of ammunition, magazines, holsters, firearm conversion kits, firearm accessories, and empty firearm boxes. (Id.). In the home where Seawright lived with his girlfriend, agents found fifty .22 caliber rounds of ammunition, eight 9mm rounds of ammunition, two Glock 10mm magazines, one 9mm magazine, two barrels, a firearm compensator, firearm lubricant, and a speed loader. (Id.).

In an interview, Seawright admitted that he has been selling firearms. (Id.). He stated he had spent approximately $10,000 on firearms in the past three to four years. (Id.).

Seawright also bought guns for two of his family members. (Id., PageID 105). He bought a 9mm pistol in November of 2020 for his cousin, D.L., who was later arrested with the gun during a traffic stop. (Id.). He also bought a 10mm pistol in August of 2022 for his nephew, J.L. (Id.). J.L. was also arrested with this gun during a traffic stop. Seawright knew or at a minimum had reason to believe that J.L. could not legally possess a firearm due to his criminal history. (Id.). Seawright was nervous about J.L. being arrested with the gun and reported the gun stolen two days after J.L. was arrested for possessing the gun. (Id.).

**B.  Indictment and Guilty Plea**

On May 1, 2024, the grand jury returned a three-count Indictment charging Seawright with one count of Engaging in the Business of Importing, Manufacturing, or Dealing in Firearms without a Federal Firearms License, in violation of 18 U.S.C. § 922(a)(1)(A) and two counts of Making a False Statement in Acquisition of a Firearm, in violation of 18 U.S.C. § 922(a)(6).  (R. 1:  Indictment, PageID 1-4).

On October 1, 2024, Seawright pled guilty to the Indictment pursuant to a plea agreement.  (R. 18:  Presentence Report Investigation, PageID 102).   The parties have no agreement about what sentencing range to be used or sentence to be imposed in the case, other than stipulating to the advisory sentencing guidelines offense level computation. (Id.).  The government gave notice to Seawright in the plea agreement that it intended to ask for an upward variance.  (Id.).

**C.  Guideline Calculation**

The Presentence Investigation Report begins with a base offense level of 14 under U.S.S.G. § 2K2.1(a)(1) because Seawright was convicted under 18 U.S.C. § 922(a)(6) and committed the offense with the knowledge, intent, or reason to believe that the offense would transfer of a firearm or ammunition to a prohibited person.  (R. 18:  PSR, PageID 110, ¶ 22).  Six additional points were added under U.S.S.G. § 2K 2.1(b)(1)(C) because the offense involved 25-99 firearms as Seawright sold at least 40 firearms.[1]  (Id., PageID 111, ¶ 23).  This brings the total offense level to a 20 prior to a 3-level reduction for acceptance of responsibility, and 17 after such reduction. (Id., ¶ 27, 31).

---

[1] Seawright purchased at least 52 firearms.  This lower number is used here to reflect the number of firearms Seawright sold.  This number was reached by adding 14 (firearms recovered in crimes) with 26 (number of firearms not yet recovered).

Seawright's criminal history results in a Criminal History score of three. (*Id.,* PageID 112, ¶ 36).  As a result, Seawright has a Criminal History Category of II.  (*Id.,* ¶ 37).  Using this calculation, Seawright's advisory guideline sentence is 27-33 months. (*Id.,* PageID 118 471, ¶ 66).  That range is insufficient to satisfy the § 3553(a) factors.

## II.  <u>SENTENCING FACTORS</u>

Upon properly calculating the advisory guideline range, this Court is required to follow 18 U.S.C. § 3553(a), which states:

> This Court is required to consider the following factors in determining the sentence.
>
> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
> (5) any pertinent policy statement--
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

§ 18 U.S.C. § 3553(a).

**A.  The Nature and Circumstances of the Offense warrant an upward variance.**

Seawright put firearms into the hands of criminals. Fourteen firearms which Seawright bought were recovered in crimes.  Four firearms had NIBIN hits, which means they were used in other crimes.  These four firearms were linked to a total of six separate shootings.  These fourteen firearms are listed below with a brief description of the offense involved.

1.  **Taurus, G2C, 9mm pistol, serial number TL089171**
    a.  Purchased: 11-5-18
    b.  Recovered: 8-22-22
    c.  Details: Firearm was recovered from male after running from police. The male was selling drugs in the area and had an extensive felony record for drug possession and having weapons under disability convictions.

2.  **Taurus, PT140G2, .40 caliber pistol, serial number SLW95833**
    a.  Purchased:  11-5-18
    b.  Recovered:  5-7-19
    c.  Details:  The firearm was recovered in a vehicle. The suspect with the firearm also had marijuana and a scale in the vehicle.

3.  **Glock, 45, 9mm pistol, serial number BNLC331**
    a.  Purchased:  7-16-20
    b.  Recovered:  November 3, 2024
    c.  Two masked juveniles entered a crowded bar and robbed all customers inside.  One suspect dragged a victim to the rear of the bar and pistol-whipped the victim.  The firearm was recovered with an extended magazine.
    d.  Prior to being recovered, the firearm was used on November 1, 2024, to fire one round into the front door of an occupied residential home.  A witness reported a group of people shooting at each other in front of the home.  The same firearm was used in a crime on September 9, 2022, when multiple shell casings were recovered in front of a home after witnesses saw a person fire at a crowd of people from a pickup truck.

4.  **Glock, 19, 9mm pistol, serial number BPWH736**
    a.  Purchased:  9-25-20
    b.  Recovered:  August 29, 2021

    c.  The firearm was recovered from Seawright's cousin, J.L., after police saw him speeding in a car.  The loaded gun was found in the car with marijuana and electronic scales.

**5.  Glock, 17, 9mm pistol, serial number BRMM534**
    a.  Purchased:  11-13-20
    b.  Recovered:  10-3-21
    c.  Police responded to a group of people shooting at each other on a public street.  One male was shot.  A group of individuals were not following police commands to show their hands and stop.  Police had to pull rifles to control crowd.   One vehicle refused to follow commands and accelerated toward officers and crashed into police cruisers and hit a building as it fled.  Shots were fired either by police or vehicle occupant.  The firearm above was recovered from a vehicle on scene.

**6.  Glock, 45, 9mm pistol, serial number BRKW173**
    a.  Purchased  11-22-20
    b.  Recovered:  1-29-21
    c.  The firearm was recovered from D.S., Seawright's cousin, who later admitted that the Defendant bought the gun for him.  The loaded firearm was found in  D.S.'s car which smelled of burnt marijuana.

**7.  Taurus, G2C, .40 caliber pistol, serial number ACB530432**
    a.  Purchased:  3-13-21
    b.  Recovered:  7-7-22
    c.  The firearm was recovered inside a car after police saw a drug deal take place from the same car.  The Defendant stated he sold this gun at a gun show after purchasing it.

**8.  Glock, 45, 9mm pistol, serial number BUFC635**
    **a.**  Purchased 9-15-21
    **b.**  The details of this recovery are unknown.

**9.  Glock, 22, .40 caliber pistol, serial number BWMU349**
    a.  Purchased:
    b.  Recovered: 8-18-22
    c.  The firearm was recovered inside of a bag with raw marijuana after a traffic stop in Westlake.

**10. Glock, 23, .40 caliber pistol, serial number BUGF190**
    a.  Purchased:  6-30-22
    b.  Recovered:  6-17-23
    c.  The firearm was recovered in a traffic stop with thirteen individual bags of marijuana.

**11. S&W, SD9VE, 9mm pistol, serial number FYM2278**
   a. Purchased:  7-14-22
      Recovered:  The details of this firearm's recovery are unknown.
      Recovered by East Cleveland Police.

**12. S&W, M&P M2.0, 10mm pistol, serial number NMD5311**
   a. Purchased:  7-14-22
   b. Recovered:  10-26-22
   c. The police recovered this gun from J.L, Seawright's cousin.  The gun
      was found in J.L.'s waistband after he fled from police.

**13. Glock, .45, 9mm pistol, serial number BHZL539**
   a. Purchased:  8-29-22
   b. Recovered:  3-26-24
   c. A shell casing that had been fired from this gun was recovered from a
      homicide scene on 3-26-24 from a male who had been shot in the head.
      The firearm found lying close to the victim's body.
   d. Prior to this, the same firearm was used in a shooting on August 5, 2023.
      Witnessed reported multiple shots being fired into her home and shots
      were detected on Shot Spotter.  The witness's boyfriend had recently
      been killed and she believed that this shooting was connected to that
      murder.
   e. Same firearm also used in shooting on June 6, 2023.  Male exited car
      and shot on street in residential neighborhood.

**14. Glock, 29, 10mm pistol, serial number BXHT975**
   a. Purchased:  9-21-22
   b. Recovered:  4-4-23
   c. Two males broke into an occupied apartment building and stole items.
      The original caller reported that approximately five males broke into the
      apartment with guns.  The firearm with an extended magazine was
      found along path the where the suspects had fled.  One suspect was
      arrested on scene with 40 grams of fentanyl pills.

This information shows that Seawright's actions put firearms into the hands of
dangerous individuals and convicted felons.  These individuals used the firearm to commit
violent crimes such as homicides, aggravated burglaries, aggravated robberies, and
shootings.  But for Seawright's actions, these individuals may not have been able to access
firearms to commit these violent crimes.  This demonstrates why an upward variance is
appropriate.

The firearms that Seawright purchased and then sold to others are the types of firearms most commonly recovered in crimes.  For example, in 2022, ATF traced, or determined the original purchaser, of 20,520 firearms in Ohio.[2]  These included firearms for all police agencies throughout Ohio.  16,236 of those were pistols.  Id.  ATF also examined the calibers of firearms traced in Ohio in 2022.  10,242 firearms traced were 9mm semi-automatic pistols.  Id.  In comparison, 1,867 firearms traced were .40 caliber, 1,527 firearms were .380 caliber, 1,261 firearms were .22 caliber, and 1,139 firearms were .45 caliber.  Id.  Seawright only bought pistols which are the types of guns most commonly recovered in crimes.  The majority of calibers he bought were also the same and the types most commonly used in crimes. This demonstrates that Seawright was not a collector of firearms and did not purchase unique firearms to sell.  He bought the types of firearms that most individuals wanted to purchase and that are most commonly recovered in crimes.

Though Seawright's conduct did not qualify for the four-level enhancement for trafficking of firearms pursuant to § 2K2.1(b)(5), his actions are no less culpable than an individual who satisfies that section.  Application note 13 explains that for that enhancement to apply, a person must transfer or otherwise dispose of two or more firearms *to another individual*.  This would apply when a defendant sells multiple firearms to the same individual. Because Seawright sold multiple firearms to *different* individuals the enhancement did not apply.  This distinction defies logic.  Seawright's conduct is at least, if not more, dangerous than a person who sells multiple firearms to one person. Seawright's actions put firearms into the hands of multiple individuals. This made it possible for more people to commit crimes and put guns into the hands of more prohibited people.

---

[2] https://www.atf.gov/resource-center/firearms-trace-data-ohio-2022#types (last accessed December 17, 2024).

Application note 13(C) of § 2K2.1 also notes that if a defendant trafficked substantially more than 25 firearms, an upward departure may be warranted. This shows that it is proper for this Court to consider that Seawright bought at least 52 guns and sold most of them.  Fourteen firearms were recovered in crimes.  (R. 18:  PSR, PageID 109). Four of the firearms Seawright bought were recovered in shootings, one involving a homicide.  (Id.).  Twenty-six firearms still have not been recovered by police.  (Id.).  It is unknown who has those firearms or what crimes they may be used to commit in the future.

The nature and circumstances of the offense outlined above show why an upward variance is appropriate.  A guideline sentence of 27-33 months does not adequately reflect Seawright's conduct in this case.  He bought and then sold multiple guns and those guns turned up in the hands of dangerous felons and were used to commit crimes. The impact of Seawright's criminal conduct will likely continue well after he is sentenced as the guns he sold continue to be recovered and used in crimes.  A sentence of 60 months is appropriate and necessary to account for the § 3553(a) factors, including reflecting the seriousness of the offense, promote respect for the law and provide just punishment.  An upward variance is also necessary to deter this type of criminal conduct and protect the public from future crimes of Seawright.

The Government respectfully asks that this Court impose an upward variance to Seawright's sentence based on the factors provided in 18 USC § 3553(a).

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

/s/ Margaret A. Kane
Margaret A. Kane (OH 0082084)
Assistant U.S. Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3624
(215) 522-7358 (facsimile)
Margaret.Kane@usdoj.gov